Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
KwanpornTulyathan (State Bar No. 316704)
ktulyathan@diversitylaw.com
**DIVERSITY LAW GROUP, P.C.**
515 S. Figueroa St., Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile

WILLIAM L. MARDER, ESQ. (CBN 170131)
bill@polarislawgroup.com
**Polaris Law Group LLP**
501 San Benito Street, Suite 200
Hollister, CA 95023
Tel: (831) 531-4214
Fax: (831) 634-0333

Dennis S. Hyun (State Bar No. 224240)
dhyun@hyunlegal.com
**HYUN LEGAL, APC**
515 S. Figueroa St., Suite 1250
Los Angeles, CA  90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA REILLY, as an individual and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>RECREATIONAL EQUIPMENT, INC., a Washington corporation; and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | Case No. 3:18-cv-07385-LB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND REPRESENTATIVE SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:　　　　August 6, 2020<br>Time:　　　　9:30 a.m.<br>Dept.:　　　　B, 15th Floor<br>Judge:　　　Hon. Laurel Beeler |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 6, 2020, at 9:30 a.m., or as soon thereafter as counsel may be heard, before the Honorable Magistrate Judge Laurel Beeler, in Courtroom B of the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Martha Reilly ("Plaintiff") will and hereby does move the Court for an Order: (1) granting final approval of the proposed class action settlement; (2) approving Class Counsel's application for attorneys' fees in the amount of $1,666,666.67 (approximately one-third of the Maximum Settlement Amount) and reimbursement of costs in the amount of $14,266.97; and (3) approving Plaintiff's request for an enhancement award of $10,000.00.

Given that this is a Motion for Final Approval of a settlement reached with Defendant Recreational Equipment, Inc. ("Defendant"), Plaintiff does not anticipate that Defendant will oppose this Motion.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the accompanying Declarations of Larry W. Lee, Dennis S. Hyun, William L. Marder, Plaintiff, and Elizabeth Kruckenberg, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.


DATED:  July 2, 2020                    DIVERSITY LAW GROUP, P.C.


                                        By:  _____/s/ Larry W. Lee_____
                                              Larry W. Lee
                                        Attorney for Plaintiff and the Class

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ................................................................................................ 8

II.   SUMMARY OF ARGUMENT ........................................................................... 9

III.  THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT .................................................................. 10

 A.   Dissemination of Notice ............................................................................. 10

 B.   CAFA Notice .............................................................................................. 10

IV.   OVERVIEW OF ISSUES AND ARGUMENT ................................................ 10

V.    LITIGATION HISTORY ................................................................................. 11

VI.   THE SETTLEMENT ........................................................................................ 12

 A.   The Strength of Plaintiff's Case Supports Settlement ............................... 14

 B.   Risks, Expense, and Duration of Continued Litigation Supports Settlement ........ 15

 C.   The Settlement Amount Favors Settlement ................................................ 15

 D.   The Extent of Discovery Favors Settlement .............................................. 17

 E.   The Recommendations of Counsel Favor Approval of the Settlement ................. 17

 F.   The Class Has Responded Favorably to the Proposed Settlement ......................... 18

 G.   The Procedure Through Which the Settlement Was Achieved Supports Final Approval ..... 18

VIII. THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED ....... 20

 A.   The Percentage Awarded Should Mimic the Market ................................. 23

 B.   The Lodestar Calculation "Cross-Check" .................................................. 27

  1.  Plaintiff's Counsel's Lodestar is Reasonable ..................................... 28

 C.   The Court Should Approve the Request for Reimbursement of Costs ................ 29

IX.   PLAINTIFF'S ENHANCEMENT SHOULD BE APPROVED ....................... 30

X.    CONCLUSION ................................................................................................ 31

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

**State Cases**

4

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) ............................................ 9, 15, 16

5

*Laffitte v. Robert Half Int'l., Inc.* 231 Cal.App.4th 860 (2014) ................................................. 22, 23

6

*Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 503 (2016) ...............................................................22

7

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal. App. 4th 399, 412 (2010) ....... 30

8

*Thurman v. Bayshore Transit Management, Inc*., 203 Cal. App. 4th 1112, 1136 (2012) ............ 16

9

**Federal Cases**

10

*Armstrong v. Board of Sch. Dirs*., 616 F.2d 305, 325 (7th Cir. 1980)........................................ 17

11

*Bellinghausen v. Tractor Supply Co*., 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015) ....... 16

12

*Blum v. Stenson*, 465 U.S. 886, 900 (1984) ................................................................................ 20

13

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)....................................................... 20, 21, 29

14

*Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979).................................................. 17

15

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001)................................................. 31

16

*Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991)....................... 20, 24

17

*Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885) ................................................. 21

18

*Chambers v. Whirlpool Corp*., No. 2016 WL 5922456, at *10 (C.D. Cal. Oct. 11, 2016) ......... 22

19

*Chun–Hoon v. McKee Foods Corp*., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) ........... 14, 17, 18

20

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004)......................................... 18

21

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ............................................... 14

22

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ............................................................... 31

23

*Cotter v. Lyft, Inc*., 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016)............................................. 16

24

*Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008)......................... 26

25

*Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001)

26

................................................................................................................................................ 26

27

*Dyer v. Wells Fargo Bank, N.A*., 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014).... 15, 17, 18

28

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ...................................... 17

---

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT**

*Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 113CV00474DADBAM, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017) ................................................................. 23

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251-252 (S.D. Ohio 1991) ................................................................................................................... 31

*Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1236 (9th Cir. 2001) ................................................................................................................... 21

*Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) ................................................... 21

*Glass v. UBS Fin. Servs.*, No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *51-52 (N.D. Cal. Jan. 27, 2007) ................................................................................................... 31

*Glass v. UBS Financial Services, Inc.*, 2007 WL 474936, at *16 (N.D. Cal. Jan 26, 2007)........ 20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ........................................... 14, 19

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ............................... 21

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) . 31

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)................................... 16, 17

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)............................ 18

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995).............................................. 21

*In re Prudential Ins. Co. of America Sales Practice Litigation*, 106 F. Supp. 2d 721 (D.N.J. 2000) ................................................................................................................... 27

*Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881) ....................... 21

*Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000) .................................................. 14

*Ketchum vs. Moses*, 24 Cal. 4th 1122, 1133 (2001) ...................................................... 29

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ...................................... 17

*Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 5:16-cv-333 EJD ................................ 26

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ...................................... 19

*Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058 (N.D. Cal. 2019) ............................ 26

*Mangold v. Cal. Public Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ............................ 22

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970)........................................................ 20

*Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013)............. 15

5

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ............................................ 27

*Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982) ............................................................................................. 18, 19

*Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ................................. 18

*Ramirez v. Walgreen*, N.D. Cal. Case No. 18-cv-03921-EJD (Dkt. No. 34) ............................... 23

*Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) .............................................. 17

*Roberts v. Texaco*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) ....................................................... 26

*Rodriguez v. Nike Retail Servs., Inc.*, 928 F.3d 810, 818 (9th Cir. 2019) ................................... 26

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................................ 19

*Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261-62 (C.D. Cal. 2016) .......................... 28

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939) .................................................... 20

*Stanton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) ......................................................... 30

*Stemple v. RingCentral, Inc.*, N.D. Cal. Case No. 3:18-cv-04909-LB ........................... 26, 28, 29

*Stetson v. West Publishing Corp.*, Case No. 13-57061, at *11 (9th Cir. May 11, 2016) ........ 21, 27

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) ................ 31

*Vandervort v. Balboa Capital Corp.,* 8 F. Supp. 3d at 1209-10 (C.D. Cal. 2014) ...................... 30

*Villalpando v. Exel Direct Inc.*, No. 3:12-CV-04137-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016) ........................................................................................................... 23

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ........................... 21, 22, 26, 28

*Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440, 447 (2000) ........................... 29

*Weiss v. Mercedes–Benz*, 899 F. Supp. 1297 (D.N.J. 1995) ...................................................... 26

*Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir.1997) ............... 20

*Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ............................................... 17, 19

*Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*, E.D. Cal. Case No. 1:17-cv-00853-DAD-EPG (Dkt. No. 55) ................................................................................................... 23

**Statutes**

California Business and Professions Code § 17200, *et seq* ...................................................... 11

Labor Code § 1194 ............................................................................................................ 11, 30

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT**

Labor Code § 1197.1 ................................................................................................ 11

Labor Code § 203 .................................................................................................... 15

Labor Code § 218.5 ................................................................................................. 30

Labor Code § 226 .................................................................................................... 15

Labor Code § 226(a) ............................................................................................... 11

Labor Code § 226(e) ............................................................................................... 30

Labor Code § 226.7 ................................................................................................ 11

Labor Code § 2698 .................................................................................................. 11

Labor Code § 2699(e)(2) ......................................................................................... 16

Labor Code § 2699(g)(1) ......................................................................................... 30

Labor Code § 2699(e)(2) ......................................................................................... 16

Labor Code § 510 .................................................................................................... 11

Labor Code § 512 .................................................................................................... 11

Labor Code § 558 .................................................................................................... 11

**Other Authorities**

4 *Newberg on Class Actions*, § 11.24 (4th Ed. & Supp. 2002) ............................... 19

4 *Newberg on Class Actions*, §11.45 .................................................................... 16

4 *Newberg on Class Actions*,  § 14.6 .............................................................. 21, 23

*Manual for Complex Litigation* (Fourth) § 21.6 (2004) ................................... 18, 19

**Rules**

Federal Rule of Civil Procedure 23(e) ................................................................... 14

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3      By this motion, Plaintiff Martha Reilly ("Plaintiff") seeks final approval of a substantial

4  class-wide settlement reached between Plaintiff and Defendant Recreational Equipment, Inc.,

5  ("Defendant," or "REI") (Plaintiff and Defendant collectively, the "Parties").  Plaintiff also seeks

6  an order approving Class Counsel's application for attorneys' fees in the amount of

7  $1,666,666.67 (one-third of the Maximum Settlement Amount of $5,000,000.00), reimbursement

8  of litigation costs in the amount of $14,266.97, and Plaintiff's application for an enhancement

9  award of $10,000.00.  This request was set forth in the Notice of Class Action Settlement

10 ("Notice Packet") mailed to all Class Members.  Moreover, the settlement documents, including

11 the Agreement, were uploaded and made available to putative class members on the

12 Administrator's website.  As set forth in the Stipulation of Class Action Settlement and Release

13 of Claims ("Settlement Agreement") between the Parties, Defendant has agreed to not object to

14 the requests sought herein.

15      Defendant provided to Plaintiff detailed pay and time data for the **entire** Class, which

16 included the number of payroll periods at issue.  From this data, Plaintiff's counsel was able to

17 calculate the maximum amount of class-wide damages, which is approximately $17.8 million.

18 (Declaration of Larry W. Lee ("Lee Decl.") ¶ 4).  With respect to the PAGA penalties, which are

19 discretionary and subject to reduction by this Court, the potential maximum is approximately

20 $25,000,000.  (*Id.*)

21      The Class Settlement results in an average payment of approximately $434.70 per person,

22 with the highest payment to be approximately $1,507.27.  (Declaration of Elizabeth Kruckenberg

23 ("Kruckenberg Decl.") ¶ 12).

24      On March 26, 2020, the Court entered an Order Granting Plaintiff's Motion for

25 Preliminary Approval of Class Settlement (Dkt. No. 53) ("Preliminary Approval Order").  On

26 April 27, 2020, the Court issued an amended Order Granting Plaintiff's Motion for Preliminary

27 Approval, in which the Court struck the term "court" from the response deadline.  (Dkt. No. 55).

28 As the notice process has been completed, the Parties now seek this Court's final approval of the

8

settlement.

The settlement requires Defendant to pay a total of $5,000,000.00, a sum which represents a substantial recovery for the members of the Class. **Again, this settlement is non-reversionary, such that no monies will revert back to Defendant.** As such, there was no claims process involved. Class Members were given an opportunity to object or opt-out of the settlement. To date, there have been nine (9) opt outs and zero (0) objections to the settlement. (Kruckenberg Decl. ¶¶ 9-10). Accordingly, this shows that the overwhelming majority of Class Members have reacted favorably to the settlement. Moreover, all of this Court's orders concerning dissemination of the Notice Packet have been followed.

Based thereon, Plaintiff respectfully requests that final approval be granted in its entirety.

## II.    SUMMARY OF ARGUMENT

The Parties have engaged in formal discovery, including Plaintiff propounding interrogatories and requests for production, reviewing Defendant's document production and discovery responses, taking Defendant's FRCP 30(b)(6) deposition, Plaintiff sitting for her deposition, and obtaining class data from which Plaintiff's counsel was able to calculate the maximum exposure. Based on the data produced, it was calculated that the realistic damages for the Class was approximately $17.8 million, which is based on approximately $2.1 million owed due to the security checks, approximately $11 million for potential waiting time penalties, and approximately $4.7 million for inaccurate wage statements. (Lee Decl. ¶ 4). With respect to the PAGA penalties, which are discretionary and subject to reduction by this Court, the potential maximum is approximately $25 million. (*Id.*) If this Court reduced the PAGA penalties by 90%, as the trial court did in *Carrington*, then the total exposure would be only $2.5 million. (*Id.*) On November 13, 2019, the Parties attended a full day of mediation with employment mediator, Steve Rottman, Esq., during which the Parties arrived at the current settlement. (Lee Decl. ¶ 5).

The detailed terms of the settlement are set forth in the Joint Stipulation of Class Action and Representative Settlement ("Settlement Agreement") entered into by the Parties and previously provided to this Court. (Dkt. No. 44). Pursuant to the settlement terms, Defendant

9

will pay the entirety (100%) of the settlement sum of $5,000,000.00 without any reversion to Defendant.

The proposed settlement meets the criteria for final approval which are set forth in the Manual for Complex Litigation, Fourth, is well within the range of what would be fair, reasonable, and adequate in this case. Thus, Plaintiff requests that the Court take the final step in the approval process – granting the requested final approval of the settlement which is sought herein.

## III.   THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT

### A.   Dissemination of Notice

As noted above, preliminary approval was granted on March 26, 2020. At that time, Phoenix Settlement Administrators (the "Settlement Administrator") was appointed by the Court as the Settlement Administrator. The Parties, through the work of the Settlement Administrator, have complied with this Court's orders concerning dissemination of the class notices. (Kruckenberg Decl. ¶¶ 3-8).

The notices were mailed to the class of 7,294 individuals utilizing the data provided by Defendant. (Kruckenberg Decl. ¶¶ 3-5). Of those, 317 notices were returned with an invalid address. (Kruckenberg Decl. ¶ 6). Out of these, 311 were mailed to updated addresses after using skip trace. (*Id.*) As of the date of the filing of this Motion, six (6) Notice Packets are considered undeliverable. (*Id.* ¶ 7).

### B.   CAFA Notice

On or about February 25, 2020, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Defendant provided notice of the proposed settlement to the required federal and state agencies.

## IV.   OVERVIEW OF ISSUES AND ARGUMENT

As discussed in detail in the previously filed Motion for Preliminary Approval (Dkt. No. 46), the class claim at issue in this lawsuit arises from Plaintiff's allegations that Plaintiff and Class Members were required to undergo security inspections and that Defendant purportedly

10

issued defective wage statements.  Defendant, however, strongly disagrees with Plaintiff's contentions and believe that Plaintiff's claims are without merit. Defendant contends that it has complied with all applicable laws.

## V.    LITIGATION HISTORY

On October 31, 2018, Plaintiff commenced this action in Superior Court for the State of California, County of Alameda, alleging claims for violation of California Labor Code §§ 226(a), 226.7, 510, 512, 558, 1194, 1197, and 1197.1, and California Business and Professions Code § 17200, *et seq*.

On December 7, 2018, Defendant filed a Notice of Removal of Action to the United States District Court for the Northern District of California.  Defendant then filed a Motion to Dismiss the Complaint.  Plaintiff opposed Defendant's Motion to Dismiss, which the Court granted with leave to amend.  Thus, on December 28, 2018, Plaintiff filed a First Amended Complaint, alleging an additional claim for violation of California Labor Code § 2698, *et seq*.

Defendant then filed another Motion to Dismiss the First Amended Complaint, which Plaintiff again opposed.  The Court granted Defendant's Motion to Dismiss and, thus, on March 13, 2019, Plaintiff filed a Second Amended Complaint alleging additional facts to her complaint. The Second Amended Complaint is the operative complaint ("Complaint").

Plaintiff conducted formal written discovery, including propounding interrogatories and requests for production.  Plaintiff obtained and reviewed Defendant's discovery responses and document production.  Plaintiff's counsel traveled to Seattle to take the depositions of Defendant's FRCP 30(b)(6) witnesses regarding its security check and payroll policies and procedures.  Defendant also took the deposition of Plaintiff.  (Lee Decl. ¶ 3).

The Parties then agreed to conduct a private mediation with wage and hour class action mediator Steve Rottman on November 13, 2019.  (Lee Decl. ¶¶ 4-5).  In connection with the mediation, Defendant provided Plaintiff with data for the entire class, which permitted Plaintiff's counsel to conduct a damage analysis.  (*Id*.)

As the Court can see from the docket, from the time of initial filing to the instant settlement, this case has been vigorously litigated by both parties. The Parties have also

exchanged data and documents, including the data for the entire class to permit Plaintiff to conduct a damage analysis.  Further, the Parties have been engaged in active settlement discussions during the pendency of this action.

## VI.    THE SETTLEMENT

The Settlement terms were summarized in detail in the Motion for Preliminary Approval, and Plaintiff respectfully incorporates those arguments herein so as to avoid unnecessary duplication.  The specific terms of the settlement are set forth in the Settlement Agreement and the Order Granting Motion for Preliminary Approval of Class Settlement.  (Dkt. Nos. 44 and 53). The principal terms are:

a.    Settlement Class is "[a]ll persons employed by Defendant in California as a non-exempt retail store employee at any time from October 31, 2014 through the date of the Preliminary Approval of the Settlement [March 26, 2020]."

b.    The PAGA Member subclass is defined as "the subclass of Class Members employed by Defendant in California as a non-exempt retail store employee at any time during the PAGA Period [August 27, 2017 through March 26, 2020], who constitute the alleged aggrieved employees within the meaning of PAGA in this Action."

c.    The Settlement Class is releasing:

> [T]he claims released by Plaintiff and the Participating Class Members, which include all claims under state, federal, or local law, whether statutory, arising out of the claims expressly pleaded in the Action and all other claims that could have been pleaded based on the facts pleaded in the Action including: failure to pay wages owed, including minimum and overtime wages; failure to provide compliant meal and rest periods; failure to pay all wages due to discharged or quitting employees; failure to provide accurate wage statements; alleged violation of Business and Professions Code Section 17200 based on the alleged Labor Code violations; alleged violation of the IWC Wage Orders based on the claims alleged; any claims for injunctive relief; liquidated damages, penalties, interest, fees, and costs; and all other claims and allegations made or that could have been made in the Action based on the facts and alleged in the Action.  In addition, Defendant will also receive a release of claims under the Fair Labor Standards Act ("FLSA") based on the claims alleged for those Participating Class Members who cash their settlement checks.

d.    The PAGA Member subclass is releasing:

Upon the Effective Date, Plaintiff, the State of California (including the LWDA), and the PAGA Members will be deemed to have fully, finally and forever released, settled, compromised, relinquished, and discharged with respect to all of the Released Parties any and all Released PAGA Claims that accrued during the Released PAGA Claims Period.  As defined above, Released PAGA Claims include all claims for civil penalties, attorneys' fees and costs arising out of the Labor Code claims and allegations expressly pleaded in the Action, and all other Labor Code claims that could have been asserted based on the facts and allegations pleaded in the Action, including but not limited to: failure to pay wages owed, including minimum and overtime wages; failure to provide meal and rest periods; failure to pay all wages due to discharged or quitting employees; and failure to provide accurate wage statements.

e.  Defendant will pay a total Settlement Amount of $5,000,000.00.  This sum includes payments made to the settlement class members, settlement administration costs, awards of attorneys' fees and costs, the class representative enhancement award, and payment to the LWDA.

f.  Out of the total Settlement Amount of $5,000,000.00, $150,000.00 will be allocated as the PAGA Settlement Amount.  In accordance with PAGA, 75% (*i.e.*, $112,500.00) of the PAGA Settlement Amount will be paid to the LWDA and 25% (*i.e.*, $37,500.00) will be distributed to the PAGA Members in accordance with the formula set forth in the parties' Settlement Agreement (Dkt. 44).

g.  The sum available for use as payments to class members after the settlement administration costs, awards of attorneys' fees and costs, the class representative enhancement award, and to the LWDA shall be referred to as the Net Class Settlement Amount.  Defendant agrees that it shall pay the entirety (100%) of the Net Class Settlement Amount.  **In other words, the settlement is non-reversionary, meaning that no funds will revert back to Defendant.**

h.  No claim forms were necessary for any class member to participate in the settlement and receive their share of the settlement.  Thus, any class member who does not opt-out in connection with this settlement will automatically receive his/her share of the settlement proceeds.  On average, class members will receive approximately $434.70 per person, with the highest payment to be approximately $1,507.27.  (Declaration of Elizabeth Kruckenberg

("Kruckenberg Decl.") ¶ 12).

i.     All of this Court's orders in connection with the settlement administration process have been followed.  (*See* Kruckenberg Decl. filed herewith).

The settlement represents a compromise between the positions and evaluations of the two sides to this controversy. Clearly, there were significant disagreements between the Parties as to the facts and the law.

## VII.    THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval.  The court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000).  In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned."  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The fairness, reasonableness, and adequacy of any class action settlement depends on "the relative strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; ... and the reaction of class members to the proposed settlement." *Hanlon* 150 F.3d at 1026.  Here, as set forth in the Motion for Preliminary Approval and discussed below, the factors for final approval of this settlement have been established.

### A.     The Strength of Plaintiff's Case Supports Settlement

This factor is generally satisfied when plaintiffs must overcome barriers to make their case. *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  First, Plaintiff would have been required to prevail on a class certification motion, which is never a guarantee.  Second, even assuming class certification could be achieved, Plaintiff would have

14

been required to establish that the violations did in fact exist.  As set forth above, Defendant

disputes that it maintained a security check policy during the class period and that its wage

statements complied with Labor Code § 226.  Moreover, Defendant denies that it acted willfully

and/or knowing and intentionally to warrant penalties under Labor Code §§ 203 and 226.

Finally, even if a violation could be established, as to the PAGA claim, this Court has complete

discretion to decrease any applicable penalties that could be assessed.  Indeed, just recently, the

California Court of Appeals upheld a decision wherein PAGA penalties were reduced by 90%.

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018).

Therefore, this factor favors settlement.  *See Dyer v. Wells Fargo Bank, N.A*., 2014 WL

5369395, at *3 (N.D. Cal. Oct. 22, 2014) (factor favors final approval where "[p]laintiffs

acknowledge that, if the settlement is not approved, they will encounter significant obstacles in

establishing their claims"); see *also Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5

(N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement

because plaintiffs admitted they would face hurdles in proving liability and damages).

## B.  Risks, Expense, and Duration of Continued Litigation Supports Settlement

"Difficulties and risks in litigating weigh in favor of approving a class settlement."  *Dyer*,

2014 WL 5369395, at *3 (citation omitted).  In addition to the obstacles set forth above, even if

Plaintiff had prevailed at trial, there was a likelihood that Defendant would have appealed the

verdict.  Thus, the risks, expense, and duration of continued litigation favor final approval of the

settlement.  *See id.* at *3 ("This factor supports final approval of this settlement because, without

a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation.").

Again, Plaintiff faced significant risk in this case based on Defendant's contention that it did not

mandate security inspections and that its wage statements complied with the law.

## C.  The Settlement Amount Favors Settlement

The standard of review for class settlements is whether the Settlement is within a range of

reasonableness.  As Professor Newberg comments:

> Recognizing that there may always be a difference of opinion as to
> the appropriate value of settlement, the courts have refused to
> substitute their judgment for that of the proponents. Instead the
> courts have reviewed settlements with the intent of determining

15

whether they are within a range of reasonableness....

4 *NEWBERG ON CLASS ACTIONS*, at §11.45.

Numerous courts have held that **gross** settlements approximating between only 8 and 25% of the defendant's potential exposure are fair and reasonable.  *See, e.g.*, *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir.2000) (holding that class action settlement recovering 16% of potential exposure was fair and reasonable; "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.  Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment"; noting that whether the settlement is fair and adequate depends on the "the difficulties in proving the case"); *Bellinghausen v. Tractor Supply Co.*, 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015) (holding that class action settlement recovering between 8.5% and 25% of the defendant's potential exposure was fair).

As already stated above, Defendant contends that it has complied with the law. Moreover, under Section 2699(e)(2), using its discretion the presiding court "may award a lesser amount than the maximum civil penalty amount . . . if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory."  Lab. Code § 2699(e)(2); *see also Amaral v. Cintas*, 163 Cal. App. 4th at 1211-1212 (recognizing the reviewing court has discretion to reduce civil penalties because of an employer's "good faith defense"); *Thurman v. Bayshore Transit Management, Inc.*, 203 Cal. App. 4th 1112, 1136 (2012) (holding that "trial court reasonably determined that an award of the maximum penalty amount [under PAGA] would be unjust"); *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016) (same).  Again, in *Carrington*, 30 Cal. App. 5th 504, the Court of Appeal affirmed the trial court's reduction of PAGA penalties by 90%.

Nevertheless, assuming 100% liability, the $5 million settlement represents 11.7% of the maximum $42.8 million exposure (including maximum PAGA penalties), which is reasonable and consistent with other class action settlement recoveries.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

### D.     The Extent of Discovery Favors Settlement

Here, settlement was reached following the exchange of significant written discovery, depositions, meet and confer processes, and production and review of substantial amounts of data and documents.  The negotiations at all times were adversarial and non-collusive, including a full day before a third-party mediator.  Moreover, Plaintiff's counsel had the discovery necessary to ascertain the value of the class claims.  Courts have held that such discovery is sufficient for parties to make an informed decision regarding the adequacy of the settlement. *See*, *e.g.*, *Dyer*, 2014 WL 5369395, at *3 (parties' participation in written discovery, depositions, witness interviews, and formal mediation favors an informed settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 ("true value of the class claims is well-known and class counsel possess a sufficient understanding of the issues involved and the strengths and weaknesses of the case"); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (formal discovery not necessary where the parties have sufficient information to make an informed decision about settlement).

### E.     The Recommendations of Counsel Favor Approval of the Settlement

The recommendations of experienced counsel should be given considerable weight. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980),  ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983), *Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980).

Lead counsel for Plaintiff has broad experience litigating employment class actions.  (Lee Decl. ¶¶ 8-12; Declaration of Dennis S. Hyun ("Hyun Decl.") ¶¶ 3-6; Declaration of William L. Marder ("Marder Decl.") ¶¶ 7-14.)  They support this settlement as a fair and reasonable settlement which is in the best interest of the settlement class.  (Lee Decl. ¶¶ 6-7; Hyun Decl. ¶¶ 11-12; Marder Decl. ¶¶ 2-3.)  Therefore, this factor favors approval of the settlement.  *See Dyer*, 2014 WL 5369395, at *3 (recommendation of plaintiffs' counsel supports approval of

1   settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 (same).

2   **F.    The Class Has Responded Favorably to the Proposed Settlement**

3   "[T]he absence of a large number of objections to a proposed class action settlement

4   raises a strong presumption that" the settlement is favorable to class members.  *In re Omnivision*

5   *Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008), *see Pallas v. Pacific Bell*, 1999 WL

6   1209495, at *6 (N.D. Cal. July 13, 1999) ("The greater the number of objectors, the heavier the

7   burden on the proponents of settlement to prove fairness.").

8        Here, zero individuals have objected, only nine individuals have opted out of this

9   settlement, and there are no disputes.  (Kruckenberg Decl. ¶¶ 9-11.)  In other words, this

10  settlement has a 0% objection and a 0.12% opt out rate.  (*Id.*)  Thus, the low percentage of

11  objections and opt-outs strongly support the fairness of the settlement.  *See Churchill Vill. LLC v.*

12  *Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) (approving settlement with 45 objections and 500

13  opt-outs from a 90,000-person class, representing .05% and .56% of the class, respectively);

14  *Dyer*, 2014 WL 5369395, at *4 (strong support from class in favor of approving settlement

15  where only three of 8,695 class members opted out); *Chun–Hoon*, 716 F. Supp. 2d at 852 (where

16  16 of 329 class members opted out, court found that positive class reaction "strongly supports

17  settlement").

18  **G.    The Procedure Through Which the Settlement Was Achieved Supports Final**
19  **Approval**

20       The Ninth Circuit has recognized that the factors to be examined at final approval may

21  differ depending on the circumstance of each case.  *Officers for Justice*, 688 F.2d at 625.

22  Therefore, although not one of the *Officers for Justice* listed factors, the procedures by which the

23  settlement was achieved also strongly support the fairness of the settlement.  *See Chun-Hoon*,

24  716 F. Supp. 2d at 851 ("To these factors, the court adds as a ninth factor to consider the

25  procedure by which the settlement was arrived at"), citing *Manual for Complex Litigation*

26  (Fourth) § 21.6 (2004).  As noted above, the parties participated in an arm's-length negotiation,

27  facilitated by a professional mediator with significant class action experience.  This weighs in

28  favor of approval of the settlement.  *See Chun-Hoon*, 716 F. Supp. 2d at 851 (finding that use of

18

formal arm's-length mediation supported approval of settlement agreement).

Further, the Ninth Circuit has shown longstanding support of settlements reached through arm's length negotiation by capable opponents.  In *Rodriguez v. West Publishing Corp*., 563 F.3d 948 (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties."  *Id*. at 965, citing *Hanlon*, 150 F.3d at 1027.  The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here.

The Court in *Rodriguez* found that the settling parties "put a good deal of stock in the product of an arms' length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (citations omitted).  As the Court explained, "[i]n reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id*. at 965 (citations omitted). *See also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir.1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *4 NEWBERG ON CLASS ACTIONS* § 11.24 (4th Ed. & Supp. 2002); *Manual For Complex Litigation* (Fourth) § 30.42).

The proposed settlement has no deficiencies.  There is no standard or benchmark for determining whether any given settlement is fair.  "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982) (citation omitted).  In making its determination, the Court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements").

The settlement has been reached after considerable investigation, litigation, negotiation,

1    and involving the mediation efforts of a highly experienced mediator.  Each side evaluated the

2    strengths and weaknesses of their case and independently came to the conclusion that this

3    settlement represents a responsible means of addressing the claims of Plaintiff and the Class, as

4    well as Defendant's contention that it would prevail on the merits.

5    **VIII.   THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED**

6            Governing Ninth Circuit law, following the clear instruction of the United States

7    Supreme Court in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), establishes that

8    percentage awards are to measure against the entire common fund created in the settlement.  In

9    *Glass v. UBS Financial Services, Inc.*, 2007 WL 474936, at *16 (N.D. Cal. Jan 26, 2007), citing

10   to the Ninth Circuit authority, the Court noted:

11           The Ninth Circuit has held, however, that the district court must
             award fees as a percentage of the entire fund, or pursuant to the
12           lodestar method, not on the basis of the amount of the fund
             actually claimed by the class.

13   *See also Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir.1997).

14           Moreover, the U.S. Supreme Court consistently has recognized that "a litigant or a lawyer

15   who recovers a common fund for the benefit of persons other than himself or his client is entitled

16   to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S.

17   472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970). The purpose of this doctrine

18   is largely to avoid unjust enrichment, by spreading the litigation costs proportionally among all

19   the beneficiaries so that the active beneficiary does not bear the entire burden alone.  It provides

20   that when a litigant's efforts create or preserve a fund from which others derive benefits, the

21   litigant may require the passive beneficiaries to compensate those who created the fund.

22           Every United States Supreme Court case that has considered the award of attorneys' fees

23   under the common fund doctrine has determined those fees as a percentage of the recovery.  *See,*

24   *e.g., Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) (citing *Blum v.*

25   *Stenson*, 465 U.S. 886, 900 n.16 (1984)) (noting that the percentage of recovery method is the

26   appropriate method to award attorneys' fees in common fund cases); *Sprague v. Ticonic Nat'l*

27   *Bank*, 307 U.S. 161, 165 n.2 (1939); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128

28

1   (1885); *Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881).

2       The Ninth Circuit has also recognized a "ground swell of support for mandating a

3   percentage-of-the-fund approach in common fund cases." *Florida v. Dunne*, 915 F.2d 542, 545

4   (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995)

5   (affirming attorney's fee of 33% of the recovery).  Although the Ninth Circuit has typically

6   found that 25% of the common fund is "benchmark," numerous courts in the Ninth Circuit have

7   awarded higher amounts.  *See Stetson v. West Publishing Corp.*, Case No. 13-57061, at *11 (9th

8   Cir. May 11, 2016).  The twenty-five percent benchmark may be adjusted upward or downward

9   depending on the circumstances presented by the particular case.  Indeed, the Ninth Circuit and

10  district courts therein have routinely permitted recovery in the amount of 33.33%, 40% and even

11  up to 50% of the common fund.  *See, e.g.*, *In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1378

12  (N.D. Cal. 1989) (listing Ninth Circuit cases).

13      Seeking a fee based on a percentage of the gross recovery, which is what Class Counsel

14  is seeking here, is appropriate and even desirable in cases like this.  *See NEWBERG ON CLASS*

15  *ACTIONS*, Fourth Edition, vol. 4, p. 556, §14.6 (noting that percentage of the fund awards are

16  preferable because they align the interests of the attorney with the client, as the attorney is not

17  incentivized to bill unnecessary hours to generate a greater fee); *Boeing*, 444 U.S. at 478.  Unlike

18  the lodestar method which can encourage class counsel to devote unnecessary hours to generate a

19  substantial fee, under the POR (percentage of recovery) method, the more the attorney succeeds

20  in recovering money for the client, and the fewer legal hours expended to reach that result, the

21  higher dollar amount of fees the lawyer earns.  Thus, one of the primary advantages of the POR

22  method is that it is thought to equate the interests of class counsel with those of the class

23  members and encourage class counsel to prosecute the case in an efficient manner.

24      As reiterated by the Ninth Circuit, courts are obligated to apply California law in diversity

25  jurisdiction cases in awarding attorneys' fees.  *Farmers Ins. Exch. v. Law Offices of Conrado Joe*

26  *Sayas, Jr.*, 250 F.3d 1234, 1236 (9th Cir. 2001) ("Because this case is based on diversity

27  jurisdiction, we are obligated to apply California state law regarding attorneys' fees."); *Vizcaino*

28  *v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. Cal. Public Utils. Comm'n*,

67 F.3d 1470, 1478 (9th Cir. 1995); *Chambers v. Whirlpool Corp*., No. 2016 WL 5922456, at \*10 (C.D. Cal. Oct. 11, 2016) ("[i]n diversity actions…, the Ninth Circuit **applies state law to determine the right to fees and the method for calculating fees**") (emphasis added).

As this case was removed to this Court pursuant to diversity jurisdiction, Plaintiff respectfully submits that California law should govern this Court's analysis.  The California Supreme Court clarified its stance on common fund cases, ruling –

> "We join the overwhelming majority of federal and state courts in holding that when class action litigation established a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created."

*Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 503 (2016).  Explaining its ruling, the Court further held that "[t]he recognized advantages of the percentage method – including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging litigation – convince us the percentage method is a valuable tool that should not be denied by our trial courts." *Id* (internal citations omitted); *see also Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047.

Based on this rationale, the California Supreme Court in *Laffite* affirmed a fee award representing one-third of the common fund and rejected the objections of putative class members to this award.  *Laffitte*, 1 Cal.5th at 506.  Further, this was based on a lodestar amount that required a multiplier of 2.13.  *Id*. at 487.  As the Court held, only when the multiplier is "extraordinarily high or low [should] the trial court [] consider whether the percentage method should be adjusted so as to bring the imputed multiplier within a justifiable range."  *Id*. at 505.  Moreover, in the *Laffitte* intermediate court decision, the court observed that "33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits." *Laffitte v. Robert Half Int'l., Inc*. (2014) 231 Cal.App.4th 860, 871.

Indeed, numerous district courts have followed *Laffitte* in awarding 1/3 of the common fund.  For example, the Northern District Court in *Villalpando v. Exel Direct Inc*., No. 3:12-CV-

22

04137-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016), cited *Laffitte* when awarding

33% of the common fund:

> Plaintiffs' fee request of $ 4,500,000 represents one-third of the
> Settlement Fund, which is reasonable under both applicable law,
> and in light of the contingent risk, Counsel's documented lodestar,
> the complex and protracted nature of the case, and strong result for
> the Class.

*Id.*

Likewise, Judge Davila of the Northern District Court in *Ramirez v. Walgreen*, N.D. Cal.

Case No. 18-cv-03921-EJD (Dkt. No. 34), followed *Laffitte* in awarding Plaintiff's counsel (the

same counsel as in the instant case) 1/3 of the common fund of $1.15 million based on a

multiplier of 1.32.

The Eastern District Court in *Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*, E.D.

Cal. Case No. 1:17-cv-00853-DAD-EPG (Dkt. No. 55), also followed *Laffitte*, in awarding 1/3 of

the common fund of $3.4 million, or $1,133,333.33 in attorneys' fees applying a multiplier of

1.328. (Dkt. No. 55 at pp. 12-14). In so holding, the Court reiterated that "[i]n a diversity action

such as this, federal courts apply state law both to determining the right to fees and the method of

calculating them." *Id.*; *see also Emmons v. Quest Diagnostics Clinical Labs., Inc*., No.

113CV00474DADBAM, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017) (following *Laffitte* in

awarding 33% of the common fund; "[t]he California Supreme Court recently held that the

percentage-of-fund method of calculating attorneys' fees survives in California courts").

Accordingly, Plaintiff respectfully requests this Court to follow these authorities and award

attorneys' fees in the amount of one-third of the common fund.

## A.     The Percentage Awarded Should Mimic the Market

*NEWBERG ON CLASS ACTIONS*, Fourth Edition, vol. 4, p. 560, § 14.6 contains an interesting

discussion of the concept of a marketplace analysis and why it is so valuable in determining a

percentage award:

> [Goodrich and Silver]…suggest that fee awards should be
> consistent with contingent fee arrangements negotiated in non-
> class litigation:
> The percentage method is consistent with and is intended to mirror
> practice in the private marketplace where contingent fee attorneys

typically negotiate percentage fee arrangements with their clients. As Judge Posner emphasized in *In re Continental Illinois Securities Litigation*s, "[t]he object in awarding a reasonable attorney's fee...is to simulate the market...The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." In non-class litigations, one-third contingency fees are typical. In their concurring opinion in Blum, Justices Brennan and Marshall observed that "[i]n tort suits, an attorney might receive one-third of whatever the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."
If named plaintiffs have agreed to pay a one-third contingent fee, that is powerful evidence of a reasonable fee. One of the best ways to demonstrate the value of counsel's work to the class is to review the consideration agreed to be paid by the named plaintiffs in their contracts. If the named plaintiffs have employed their counsel by contingent fee agreements that obligated them to pay one-third of the recovery, it would indeed be inequitable for the members of the class, who will enjoy the benefits of this settlement without incurring the risks of bringing the claim, to pay less than the named plaintiffs.

The complex and heavily litigated nature of this litigation, and its successful result lead to the clear conclusion that the fee request herein is reasonable.  In *Camden I Condominium Association, Inc., v. Dunkel*, 946 F. 2d 768 (11th Cir. 1991), the court identified various factors to be considered in arriving at a common fund fee determination.  Each of the factors is now briefly addressed.

1.      The time and labor required – this is overwhelmingly established in this motion, based upon the work involved, and the supporting attorney declarations and time charts submitted;

2.      The novelty and difficulty of the questions involved – although Plaintiff believed that he could have easily obtained class certification, there was substantial risk that this case may not have prevailed on its merits.  Further, wage and hour class actions are always an evolving area of law;

3.      The skill requisite to perform the legal services properly – this goes hand in hand with the first and second factors.  Plaintiff's counsel was able to litigate this case effectively and ultimately achieved a very good result for the class because of Plaintiff's counsel's experience in litigating wage and hour cases;

4.      The preclusion of other employment by the attorney due to the acceptance of the

case – the case required and demanded attorney time on both sides.  The result of this scheduling was that Class Counsel could have spent such time on numerous other matters while this litigation was ongoing;

5.      The customary fee – as discussed above, numerous courts have approved an award of 33.33% of the gross settlement fund, which is the standard percentage pursuant to California law;

6.      Whether the fee is fixed or contingent – this matter was clearly contingent without any sort of fixed or guaranteed fees for Class Counsel.  Indeed, Plaintiff's counsel's sole payment was based on contingency fee and no fixed guaranteed costs would have received unless Plaintiff's counsel were successful in this litigation;

7.      Time limitation imposed by the client or the circumstances – although the client did not impose any time limitations, Class Counsel invested a significant amount of time in this case;

8.      The amount involved and results obtained – which is discussed above;

9.      The experience, reputation and ability of the attorney – as evidenced by the supporting declarations, Class Counsel has been designated and certified as class counsel in numerous other matters, including in the Northern District;

10.     The nature and length of the relationship with the client – this does not apply; and

11.     Awards in similar cases – similar cases were identified in the section above.

As the Court is well aware, Plaintiff's counsel has diligently and efficiently litigated this case and significant risks were assumed by Plaintiff's counsel in litigating this case.  Further, substantial discovery has been performed including written discovery, deposition discovery, production of documents and all of the payroll data necessary to perform a meaningful damage analysis.  Plaintiff's counsel's lodestar cross check also supports the award of the 33.33% percentage fee given that their lodestar cross check is only seeking a 2.7 multiplier, which is slightly higher than the 2.13 multiplier in *Laffitte*.

Indeed, courts may approve higher multipliers in common fund cases. To be sure, this Court applied a multiplier of 5.44 in awarding attorneys' fees in a common fund class action

settlement in *Stemple v. RingCentral, Inc.*, N.D. Cal. Case No. 3:18-cv-04909-LB; *see also Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving a multiplier of 5.2 and collecting cases); *Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (approving 30% fee, resulting in 5.3 multiplier); *Roberts v. Texaco*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (approving multiplier of 5.5); *Weiss v. Mercedes–Benz*, 899 F. Supp. 1297 (D.N.J. 1995) (approving multiplier of 9.3), *aff'd*, 66 F.3d 314 (3d Cir.1995). Lodestar multipliers may appear high for cases that settle efficiently. However, "it may be a relevant circumstance that counsel achieved a timely result" and courts recognize that "the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *Vizcaino*, 290 F.3d at 1051 n.6. Here, counsel negotiated an efficient settlement for the class. Reducing the fee award below the Ninth Circuit benchmark to reduce the multiplier would serve as a penalty for efficient settlement.

Moreover, Plaintiff's attorneys are zealous advocates, having heavily and aggressively litigated numerous wage and hour class actions on behalf of workers throughout the State of California – all cases of which are on a contingency fee basis. *See, e.g., Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 5:16-cv-333 EJD; *Rodriguez v. Nike Retail Servs., Inc*., 928 F.3d 810, 818 (9th Cir. 2019); *Magadia v. Wal-Mart Assocs., Inc*., 384 F. Supp. 3d 1058 (N.D. Cal. 2019). For example, in *Magadia*, Plaintiff's counsel litigated that case for several years, including trying the case to a successful $102 million judgment on behalf of the class. Walmart appealed and Plaintiff's counsel have not been reimbursed for any attorneys' fees or costs. As such, employment class actions present significant risks. Nevertheless, Plaintiff's attorneys zealously represent workers notwithstanding the potential for losing cases, or not being reimbursed attorneys' fees and costs for years of tireless litigation. Plaintiff's counsel should not be punished here for resolving this case without going through years of aggressive litigation.

The fee sought relates to all efforts expended by Class Counsel for the complete handling of the class/representative action, including any additional work remaining to be performed by Class Counsel in securing final Court approval of the Settlement, and later following through to

1    ensure that the Settlement is fairly administered and fully implemented.

2        A significant amount of work on the part of Class Counsel went into achieving this

3    resolution.  Based upon the factors relating to approval of percentage of the fund fee awards,

4    class counsel submit that the effort and result justify the requested percentage fee requested. As a

5    secondary "cross-check" to the percentage of the common fund award, class counsel are also

6    providing this Court with a time and task chart, which breaks down the tasks and time spent by

7    each firm, so that the Court can conduct a lodestar analysis.

8        Plaintiff's attorneys' time and task charts show in this case that Plaintiff's counsel

9    lodestar is $616,575, which requires only a reasonable multiplier of 2.7.

10       **B.**      **The Lodestar Calculation "Cross-Check"**

11       It has been noted that it is sometimes helpful to courts to "cross-check" a percentage

12   award by employing a lodestar with a multiplier analysis.  While the lodestar method is generally

13   considered inappropriate in a common fund case where real cash benefits (as opposed to coupons

14   or non-monetary benefits) are made available to class members, its use can provide further

15   validation of the appropriateness of the percentage award approach.  *See In re Prudential Ins.*

16   *Co. of America Sales Practice Litigation*, 106 F. Supp. 2d 721 (D.N.J. 2000).  Such is the case

17   here.

18       The declarations of Class Counsel evidence the fact that they devoted approximately

19   782.1 hours of time to this litigation to date.  (Lee Decl. ¶ 13, Exh. A; Hyun Decl. ¶¶ 7-9, Exh.

20   A; Marder Decl. ¶¶ 4-6, Exh. A).  These hours are summarized in the time and task charts that

21   are attached to Plaintiff's counsel's declarations.  And, to the extent that any argument is made

22   that the time spent was duplicative, the way in which Plaintiff's counsel work is for each

23   attorney to handle a task and for the other attorneys to review and revise the work, which is

24   identical to the way defense firms staff and handle cases.  More importantly, as recently noted by

25   the Ninth Circuit in *Stetson v. West Publishing Corp.*, Case No. 13-57061, at *13 (9th Cir. May

26   11, 2016), "some amount of duplicative work is 'inherent in the process of litigating over time.'"

27   (Citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

28       In addition, as explained above, Class Counsel expect to expend an additional 40 hours

through the final approval hearing, including on matters such as preparing the Motion for Final Approval and further conferring with class members regarding the case status, as well as post judgment matters, including ensuring administration of the settlement.  (Lee Decl. ¶¶ 14-15; Hyun Decl. ¶ 8; Marder Decl. ¶ 5.)  Thus, Class Counsel will have expended 822.1 hours through final approval.

Applying the various hourly rates of the law firms and lawyers who dedicated their efforts to this matter, a lodestar of $616,575.00 is established for the amount of work spent through final administration of this settlement.  (Lee Decl. ¶¶ 14-15; Hyun Decl. ¶¶ 7-9; Marder Decl. ¶¶ 4-6.)  The percentage award sought by Class Counsel, if converted to the lodestar method, would entail a multiplier of approximately 2.7.  In the Ninth Circuit, multipliers "ranging from one to four are frequently awarded…when the lodestar method is applied." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n. 6 (9th Cir.).  For example, in *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261-62 (C.D. Cal. 2016), *appeal dismissed sub nom. Spann v. J.C. Penney Corp., Inc.*, No. 16-56474, 2016 WL 9778633 (9th Cir. Nov. 7, 2016), the Court granted a 3.07 multiplier.  And, again, this Court applied a 5.44 multiplier in *Stemple*, N.D. Cal. Case No. 3:18-cv-04909-LB. Thus, the fee application is supported whether by the cross-check lodestar/multiplier method discussed herein, or by the percentage of the common fund discussed in the preceding sections.

### 1.  Plaintiff's Counsel's Lodestar is Reasonable

The hourly rates employed by Class Counsel, as declared to in the attorney declarations, are reasonable.  Plaintiff's attorneys are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. The background and experience of Plaintiff's counsel are fully set forth in the declarations filed in support of this motion.  The basic hourly rates listed for each firm are fair, and representative of the combination of years of experience and the clear successes they have had in the past in connection with class action litigation.  The time and task charts summarize the total hours devoted to the matter by the various law firms, along with the hourly rates as set forth in the supporting declarations, and the total billed.  (Lee Decl. ¶ 13, Exh. A; Hyun Decl. ¶¶ 7-9, Exh.

1    A; Marder Decl. ¶¶ 4-6, Exh. A).

2           As discussed in their supporting declarations, Class Counsel are a group of well-

3    experienced litigators, including class action litigation.  (Lee Decl. ¶¶ 8-12; Hyun Decl. ¶¶ 3-6;

4    Marder Decl. ¶¶ 7-14.)  Under California law, counsel are entitled to compensation for all hours

5    reasonably spent on the matter.  *Ketchum vs. Moses*, 24 Cal. 4th 1122, 1133 (2001).

6    Reasonableness of hours is assessed by "the entire course of the litigation, including pretrial

7    matters, settlement negotiations, discovery, litigation tactics, and the trial itself…."  *Vo v. Las*

8    *Virgenes Municipal Water Dist*., 79 Cal. App. 4th 440, 447 (2000).  In addition, the attached

9    time and task charts clearly reflect the many hours which were necessarily spent on the case.

10          In the Litigation History section above, the nature and extent of the proceedings held

11   throughout this litigation were set forth in detail.  Without repeating the same, it is incorporated

12   herein.  The total hours and billings thus generated are all supported herein.  In sum, it is

13   submitted that the reasonableness of Plaintiff's lodestar is manifest.  In the present case, Class

14   Counsel's lodestar multiplier of 2.7 is only slightly higher than the 2.13 lodestar that was

15   approved in *Laffitte* and less than the 5.44 multiplier approved by this Court in *Stemple.*  Thus,

16   the lodestar cross check heavily favors granting of 33.33% fees in this case.

17          Whether analyzed under the percentage of the fund approach, which is the dominant

18   view, or via the cross-check approach under the loadstar/multiplier approach, the fees are fully

19   supported.  This entire case has been litigated from the onset, demanded an extraordinary effort

20   on the part of Class Counsel, and further required substantial costs advanced.

21          Finally, and as instructed by our Supreme Court and Ninth Circuit law, fees should be

22   awarded off of the total fund created.  It is the creation of the fund, and the opportunity to simply

23   receive one's share, which creates the right to the fee.  *Boeing Co. v. Van Gemert*, 444 U.S. 472,

24   478 (1980).

25          **C.     The Court Should Approve the Request for Reimbursement of Costs**

26          The request for reimbursement of costs, in the amount of $14,266.97 is fair and

27   reasonable.  As stated above, the costs are all litigation related costs, which have been detailed in

28   the supporting declaration of Class Counsel.  (Lee Decl. ¶ 16, Exh. B; Hyun Decl. ¶ 10, Exh. B).

The authority for the Court to award costs is the parties' Settlement Agreement and Labor Code §§ 218.5, 226(e), 1194, and 2699(g)(1). Further, pursuant to the Settlement Agreement, Defendant has agreed not to oppose any request for reimbursement of costs up to $30,000.00, but the actual costs that are being sought are much less than the amount allotted in the Settlement Agreement. Thus, the unclaimed costs in the amount of $15,733.03 will be allocated to the Net Settlement Class Amount available for distribution to class members. Pursuant to all of the authority cited above, including this Court's opinion in *Vandervort*, 8 F. Supp. 3d at 1209-10, Plaintiff's counsel should be awarded their costs.

## IX. PLAINTIFF'S ENHANCEMENT SHOULD BE APPROVED

Finally, Plaintiff's enhancement is also justified given the duration of the litigation and her availability throughout the litigation to cooperate in producing documents, reviewing documents, preparing for and sitting for her deposition, and being available both in person and phone call to offer crucial information regarding this lawsuit.

Plaintiff respectfully requests that the full amount of the service payment be awarded to Plaintiff for the efforts undertaken on behalf of the Class Members. It is commonly held that it is appropriate to recognize the role of the representative plaintiffs without whose actions and courage the benefits of the settlement, which are conferred on the class as a whole, would never have been achieved. The criteria courts may consider in relation to incentive payments include: 1) the risk to the class representative in commencing the suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *See Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal. App. 4th 399, 412 (2010) (citing *Stanton v. Boeing Co*., 327 F.3d 938, 975 (9th Cir. 2003)). Each of these factors favors the service awards requested in the present case.

Plaintiff is the only representative in this case. Plaintiff met with her attorneys to provide information regarding the facts involved, prepare for her deposition, and travel from her home in Berkeley to San Francisco to sit all day for her deposition. (Declaration of Marth Reilly ("Reilly

30

1  Decl.") ¶ 4.)  Plaintiff has made herself available to answer questions, review the pleadings,

2  including the settlement agreement, and to sign declarations in support of the various motions

3  that have been brought in this case.  (*Id.*)

4      Plaintiff took these risks upon herself from which the whole Class benefitted.  Class

5  members did not have to file individual lawsuits, nor did they have to bear the risks of payment

6  of fees and costs should they not prevail.  (*Id.* ¶ 9).  Class members also do not have to face the

7  risk of potential retaliation or risk of future employment, due to Plaintiff's efforts.  (*Id.* ¶ 10).  In

8  short, Plaintiff sacrificed a significant amount of time, effort, and her own rights in bringing

9  about the benefits to the class.

10     The payment of enhancement awards to successful class representatives is appropriate

11  and the amount of $10,000 to Plaintiff is within the typically accepted range.  *See e.g. Van*

12  *Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (incentive award

13  of $50,000); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D.

14  Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $ 35,000);

15  *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) (granting a $50,000

16  Incentive award); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240,

17  251-252 (S.D. Ohio 1991) ($50,000 awarded to each class representative); *Glass v. UBS Fin.*

18  *Servs.*, No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *51-52 (N.D. Cal. Jan. 27, 2007)

19  (awarding $25,000 Incentive award in FLSA overtime wages class action); *Cook v. Niedert*, 142

20  F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 Incentive award to class representative in

21  ERISA case).  Moreover, a $10,000 service payment represents a mere **0.2%** of the gross

22  settlement amount.  For such reasons, Plaintiff respectfully requests that this Court find the

23  enhancement payment amount of $10,000 to Plaintiff as fair, reasonable, and adequate and that

24  the enhancement payment be awarded to Plaintiff.

25  **X.  CONCLUSION**

26     Based on the foregoing, Plaintiff and Class Counsel respectfully request that this Motion

27  be granted in its entirety and grant Plaintiff's counsel's fee request of $1,666,666.67, costs

28  requested in the amount of $14,266.97 and class representative enhancement of $10,000.00.  The

Parties have reached this settlement following extensive litigation, ongoing case discussions and arms-length negotiations. Plaintiff respectfully requests that the Court:

      1.      Grant final approval of the proposed settlement;

      2.      Order payment from the settlement proceeds to the Settlement Administrator in compliance with the Settlement Agreement;

      3.      Order payment from the settlement proceeds to Class Counsel and Plaintiff in compliance with the Settlement Agreement;

      4.      Order payment from the settlement proceeds to the LWDA in compliance with the Settlement Agreement;

      5.      Enter the proposed Final Approval Order and Judgment submitted herewith; and

      6.      Retain continuing jurisdiction over the implementation, interpretation, and consummation of the settlement.


DATED:  July 2, 2020                DIVERSITY LAW GROUP, P.C.


                                By:        /s/ Larry W. Lee
                                    Larry W. Lee
                              Attorney for Plaintiff and the Class