UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MARTHA REILLY, | Case No. 18-cv-07385-LB |
| Plaintiff, | |
| v. | **FINAL APPROVAL ORDER** |
| RECREATIONAL EQUIPMENT, INC., | Re: ECF No. 56 |
| Defendant. | |

**INTRODUCTION**

Named plaintiff Martha Reilly claims that her employer Recreational Equipment, Inc. ("REI") required her to undergo security checks after clocking out of work (whether at the end of the day or before meal-and-rest breaks), resulting underpayment for all hours worked and not receiving full meal-and-rest breaks, in violation of wage-and-hours laws, the California Labor Code, California's Unfair Competition Law ("UCL"), and California's Private Attorney's General Act ("PAGA").[1] The parties settled their case, and the court granted the plaintiff's unopposed motion for preliminary approval of the proposed settlement.[2] The plaintiff moved for, and REI did not

---

[1] Second Am. Compl. ("SAC") – ECF No. 25. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Orders – ECF Nos. 53, 55.

ORDER – No. 18-cv-07385-LB

oppose, final approval of settlement.[3] The court held a fairness hearing on August 6, 2020, and now approves the settlement.

## STATEMENT

### 1. The Lawsuit

In 2018, the named plaintiff sued REI in state court alleging wage-and-hour violations (predicated on overtime pay for the off-the-clock work).[4] On December 7, 2018, REI removed the action to federal court.[5] After the plaintiff amended her complaint,[6] REI moved to dismiss five of the seven claims (all but the wage-statements and PAGA claims) because the plaintiff did not allege that she went through any security check.[7] The court granted the motion with leave to amend.[8] The plaintiff filed a second amended complaint with more fact allegations supporting the previously dismissed claims.[9] REI answered the complaint.[10] The parties engaged in discovery, including written discovery, depositions, and REI's production of data that allowed the plaintiff to calculate damages and penalties.[11] In November 2019, they attended a full-day mediation with employment and class-action mediator Steve Rottman.[12] They then settled the case.[13]

---

[3] Mot. – ECF No. 56; Statement of Non-Opp'n – ECF No. 57.

[4] State Compl. – ECF No. 1-4 at 13–19 (¶¶ 31–58).

[5] Removal Not. – ECF No. 1 at 1.

[6] First Am. Compl. ("FAC") – ECF No. 13.

[7] Mot. – ECF No. 15.

[8] Order – ECF No. 24 at 10.

[9] SAC – ECF No. 25 at 12–19 (¶¶ 34–58).

[10] Answer – ECF No. 26.

[11] Lee Decl. – ECF No. 56-5 at 2 (¶¶ 3–4).

[12] *Id*. (¶ 5); Lee Decl. – ECF No. 45-1 at 2 (¶ 4).

[13] Lee Decl. – ECF No. 56-5 at 2 (¶ 5); Lee Decl. – ECF No. 45-1 at 2 (¶ 5).

1    Following the plaintiff's unopposed motion, the court preliminarily approved the settlement

2 after a hearing.[14] The plaintiff moved for final approval of the settlement and attorney's fees and

3 costs.[15] The court held a fairness hearing on August 6, 2020.

### 2. Settlement

#### 2.1   Settlement Class

The "Class" or "Settlement Class" is defined as follows:

> All persons employed by Defendant in California as a non-exempt retail store employee at anytime from October 31, 2014 through the date the Court issue an order granting preliminary approval of the Settlement [on March 26, 2020].[16]

The "PAGA Members" are defined as follows:

> The subclass of Class Members employed by Defendant in California as non-exempt retail store employee at anytime during the PAGA Period, who constitute the alleged aggrieved employees within the meaning of PAGA in this Action.[17]

The final class list has 7,294 Class Members.[18]

#### 2.2   Settlement Amount and Allocation

The total settlement amount is $5,000,000.[19] The net settlement amount ("NSA") — the fund recovered by the Class — is approximately $3,166,816.36 after the following deductions: (1) attorney's fees of $1,666,666.67; (2) costs of $14,266.96; (3) a proposed enhancement award of $10,000; (4) PAGA penalties of $150,000 (including payment to the California Labor Workforce

---

[14] Settlement Agreement – ECF No. 44; Mot. – ECF No. 45; Minute Entry – ECF No. 52; Order – ECF No. 53. The parties consented to magistrate-judge jurisdiction. Consents – ECF Nos. 9, 11.

[15] Mot. – ECF No. 56.

[16] Settlement Agreement – ECF No. 44 at 6 (§ 11.3); Proposed Order – ECF No. 56-6 at 4 (¶ 5).

[17] Settlement Agreement – ECF No. 44 at 9 (§ 11.19). The PAGA Period is "the period from August 27, 2017 . . . through the date the [c]ourt issues an order granting the preliminary approval of the Settlement [on March 26, 2020]." *Id.* (¶ 11.21).

[18] Kruckenberg Decl. – ECF No. 56-2 at 2 (¶ 3).

[19] Settlement Agreement – ECF No. 44 at 12 (§ 14.1).

Development Agency ("LWDA") of $112,500); and (5) administration costs of $29,750.[20] Of the NSA, 20% will be allocated as wages, 20% as interest, and 60% as penalties.[21]

The individual settlement payments will be based on the number of pay periods a Class Member worked during the Class Period and the PAGA Period.[22] The Settlement Agreement sets forth how the payments are calculated:

> (1) The Settlement Administrator will determine the number of pay periods (rounded to the nearest whole or half pay period) worked by each Participating Class Member during the Class Period, the amount from the Net Class Settlement Amount to be paid per pay period the number of pay periods (rounded to the nearest whole or half pay period) worked by each PAGA Member during the PAGA Period, the amount from the PAGA Payment to be paid per pay period and the Individual Settlement Payments to be distributed to each Class Member.
>
> (2) Defendant['s] pay period data will be presumed to be correct, unless a Class Member proves otherwise to the Settlement Administrator by credible evidence. All pay period disputes will be resolved and decided by the Settlement Administrator, and the Settlement Administrator['s] decisions on all pay period disputes will be final and non-appealable.
>
> (3) Distribution of the Net Class Settlement Amount will be calculated by dividing the Net Class Settlement Amount by the total number of pay periods for all Participating Class Members during the Class Period (resulting in the Class Pay Period Value), and then multiplying the Class Pay Period Value by the number of pay periods worked by each Participating Class Member during the Class Period.
>
> (4) Distribution of the portion of the PAGA Payment allocable to alleged aggrieved employees will be calculated by dividing 37,500 by the total number of pay periods for all PAGA Members during the PAGA Period (resulting in the PAGA Pay Period Value), and then multiplying the PAGA Pay Period Value by the number of pay periods worked by each PAGA Member during the PAGA Period.[23]

Claim forms are not required: the Settlement Administrator will issue settlement payments as checks (NSA payments to class members, PAGA payments to the PAGA members, and the PAGA Payment to the LWDA).[24] The highest individual-settlement payment is $1,507.27 and the

---

[20] *Id*. at 9 (§ 11.20), 12–14 (§§ 14.1–14.5); Kruckenberg Decl. – ECF No. 56-2 at 4 (¶ 12).

[21] Settlement Agreement – ECF no. 44 at 24 (§ 17.7).

[22] *Id*. at 14 (§ 14.6).

[23] *Id*. 14–15 (§ 14.6).

[24] *Id*. at 22–23 (§ 17.3–4); *see also* Mot. – ECF No. 56 at 13.

ORDER – No. 18-cv-07385-LB          4

average payment is $434.70.[25] The settlement is non-reversionary, and uncashed checks will be distributed to the *cy pres* beneficiary Alliance for Children's Rights.[26]

### 2.3  Release Provisions

The release provisions of the Settlement Agreement are (1) a release of the class claims under federal or state law for all claims that were pleaded or could have been pleaded under the facts alleged in the complaint (except that released claims under the Fair Labor Standards Act are limited to class members who cash their checks), (2) a release of the PAGA claims for claims that were pleaded or could have been pleaded under the facts alleged in the complaint, and (3) a general release by the named plaintiff.[27]

### 2.4  Administration

The court appointed Phoenix Settlement Administrators ("Phoenix") to administer the settlement in accordance with the requirements under the Settlement Agreement.[28] Phoenix complied with these procedures.

In April 2020, Phoenix received from REI the list of 7,294 Class Members with the following information: (1) names; (2) last known mailing address; (3) social security numbers; and (4) dates of employment, which were used to calculate each Class Member's total number of work weeks during the Class Period.[29] On April 30, 2020, Phoenix conducted a search in the National Change of Address database to update the Class Members' addresses.[30] It updated 1,140 addresses based on its search.[31]

---

[25] Kruckenberg Decl. – ECF No. 56-2 at 4 (¶ 12).

[26] Settlement Agreement – ECF No. 44 at 23 (§ 17.5).

[27] *Id*. at 10 (§ 11.24), 16–17 (§§ 15.1–15.3).

[28] Order – ECF No. 53 at 10.

[29] Kruckenberg Decl. – ECF No. 56-2 at 2 (¶ 3).

[30] *Id*. (¶ 4).

[31] *Id*. at 3 (¶ 4).

1      On April 30, 2020, Phoenix sent the notice packets to the Class Members.[32] 318 notice packets were returned to Phoenix.[33] For the returned notices without forwarding addresses, Phoenix conducted skip tracing to locate updated addresses and re-mailed the notice packets.[34] In sum, out of 7,294 mailed notices, only six notice packets were undeliverable.[35] Phoenix received nine opt-outs and no objections.[36]

**ANALYSIS**

**1. Jurisdiction**

The court has diversity jurisdiction under CAFA. *See* 28 U.S.C. § 1332(d).

**2. Certification of Settlement Class**

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b). When parties enter into a settlement before the court certifies a class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" because the court will not have the opportunity to adjust the class based on information revealed at trial. *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *accord In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019).

Class certification requires the following: (1) the class is so numerous that joinder of all members individually is "impracticable;" (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the person representing the class will fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953. Also, the common questions of law or fact must predominate over any questions affecting only individual class members, and

---

[32] *Id.* (¶ 5).

[33] *Id.* (¶¶ 5–6).

[34] *Id.* (¶ 6).

[35] *Id.* (¶ 7).

[36] *Id.* (¶¶ 9–10).

the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). All claims arise from the defendant's uniform practices, and thus liability can be determined on a class-wide basis. *Betorina v. Ranstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *5 (N.D. Cal. Apr. 6, 2017).

The court finds (for settlement purposes only) that the proposed settlement classes meet the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy. Also, under Rule 23(b)(3) (and for settlement purposes only), common questions predominate over any questions affecting only individual members, and a class action is superior to other available methods.

First, there are 7,294 Class Members.[37] The class is numerous. *Nelson v. Avon Prods., Inc.*, No. 13-cv-02276-BLF, 2015 WL 1778326, at *5 (N.D. Cal. April 17, 2015) ("Courts have repeatedly held that classes comprised of 'more than forty' members presumptively satisfy the numerosity requirement") (cleaned up).

Second, there are questions of law and fact common to the class. Common questions include whether REI failed to compensate Ms. Reilly and the other class members for the time they spent undergoing security checks before their meal-and-rest breaks and clocking out and whether REI failed to provide them accurate wage statements. *Cf. Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Betorina*, 2017 WL 1278758 at *4. These common questions predominate over any questions affecting only individual members.

Third, the claims of the representative party are typical of the claims of the class. The representative parties and all class members allege wage-and-hours violations based on similar facts. Ms. Reilly possesses the same interest and suffered from the same injury. *Cf. Betorina*, 2017 WL 1278758, at *4.

Fourth, Ms. Reilly fairly and adequately protects the interests of the class. The factors relevant to a determination of adequacy are (1) the absence of potential conflict between the named plaintiff and the class members, and (2) counsel chosen by the representative party who is qualified, experienced, and able to vigorously conduct the litigation. *In re Hyundai and Kia*, 926

---

[37] *Id*. at 2 (¶ 3).

ORDER – No. 18-cv-07385-LB                7

F.3d 539, 566 (9th Cir. 2019) (citing *Hanlon*, 150 F.3d 1011, 1020 (9th Cir. 1998)). The factors exist here: Ms. Reilly has shared claims and interests with the class (and no conflicts of interest), and she retained qualified and competent counsel who prosecuted the case vigorously. *See Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands*, Inc., 244 F.3d 1152, 1162 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1021–22.

Finally, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

In sum, the prerequisites of Fed. R. Civ. P. 23(a) and (b)(3) are met. The court conditionally certifies the class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only.

### 3. Approval of Settlement

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A court may approve a proposed class-action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. *See Hanlon*, 150 F.3d at 1027. In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id*. at 1026 (citation omitted).

When parties "negotiate a settlement agreement before the class has been certified, settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)). "Specifically, 'such

1   settlement agreements must withstand an even higher level of scrutiny for evidence of collusion or

2   other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's

3   approval as fair.'" *Id*. at 1049 (quoting *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935,

4   946 (9th Cir. 2011)).

5       The court has evaluated the proposed settlement agreement for overall fairness under the

6   *Hanlon* factors and concludes that it is free of collusion and approval is appropriate.

7       First, the $5 million settlement amount represents 11.7% of the maximum $42.8 million

8   exposure (assuming 100% liability, including full PAGA penalties without discretionary

9   discounts).[38] As the plaintiff points out, courts in this district have approved settlements at

10  comparable rates. *See, e.g., Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal.

11  2015) (settlement fund "represent[ing] between 25.4 percent and 8.5 percent of Defendant's total

12  potential liability exposure" was fair and weighs in favor of final approval); *Stovall-Gusman v.*

13  *W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4–5 (N.D. Cal. June 17,

14  2015) (approving a final settlement representing between 7.3% and 10% of the plaintiffs'

15  estimated trial award in wage-and-hour class action); *Balderas v. Massage Envy Franchising,*

16  *LLC*, No. 12-cv-06327-NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (granting

17  preliminary approval of gross settlement representing 8% of the maximum recovery and net

18  settlement representing 5% of the maximum recovery), *final approval*, 12-cv-06327-NC – ECF

19  No. 78 (N.D. Cal. Mar. 10, 2015). In addition, the PAGA allocation ($150,000 out of total of $5

20  million, or 3-percent) is within the range of reasonable settlements. *Cf. Van Kempen v. Matheson*

21  *Tri-Gas, Inc.*, No.15-cv-00660-HSG, 2017 WL 3670787, at *10 (N.D. Cal. Aug. 25, 2017)

22  (approving PAGA allocation of $5,000 from a settlement fund of $370,000, or 1.3-percent).

23      Second, there are significant litigation risks and uncertainties. The parties dispute whether the

24  claims are suitable for class certification.[39] REI contends that its security check policy and wage

---

27  [38] Lee Decl. – ECF No. 56-5 at 2 (¶ 4).

28  [39] Mot. – ECF No. 56 at 14.

statements comply with Labor Code § 226.[40] It also denies that it acted willfully, knowingly, or intentionally within the meaning of Labor Code §§ 203 and 226.[41] The litigation risks favor settlement. *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014) (litigation risks, including maintaining class-action status, favor settlement approval). Moreover, settlement allows payment to the Class Members now, before costly and protracted litigation.

Third, a class action allows class members — who otherwise would not pursue their claims individually because costs would exceed recoveries — to obtain relief.

Finally, the settlement is the product of serious, non-collusive negotiations, reached after a mediation with an experienced mediator.[42] The parties conducted discovery, including depositions, written discovery, and document production, and REI provided detailed data to the plaintiff's counsel.[43] As a result, the plaintiff's counsel was able to calculate realistic damages and meaningfully participate in the mediation.[44] *See Dyer*, 303 F.R.D. at 332 (parties "conducted sufficient discovery to make an informed decision regarding the adequacy of the settlement," where they "requested, propounded, and reviewed numerous discovery documents; conducted and participated in depositions; [and] interviewed [defendant's] employees").

In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). The court approves the settlement.

**4.  Class Representative, Class Counsel, and Claims Administrator**

The court previously appointed Ms. Reilly as the class representative. She has claims that are typical of members of the class generally, and she is an adequate representative of the class members. It also appointed Larry W. Lee of Diversity Law Group, P.C., William L. Marder of Polaris Law Group LLP, and Dennis S. Hyun of Hyun Legal, APC as class counsel for settlement

---

[40] *Id*. at 15.

[41] *Id*.

[42] Lee Decl. – ECF No. 56-5 at 2 (¶ 5).

[43] *Id*. (¶¶ 3–4).

[44] *Id*. (¶ 4).

purposes only. *See* Fed. R. Civ. P. 23(a) & (g)(1). They have the requisite qualifications, experience, and expertise in prosecuting class actions.

The court approves Phoenix's expenses of $29,750.

**5. Class Notice**

The class administrator provided notice to the members of the class in the form that the court approved previously.[45] The notice met all legal prerequisites: it was the best notice practicable, satisfied the notice requirements of Rule 23, adequately advised class members of their rights under the settlement agreement, met the requirements of due process, and complied with the court's order regarding court notice. The form of notice fairly, plainly, accurately, and reasonably provided class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of the material terms of the settlement, including the estimated payment; (4) a disclosure of the release of the claims; (5) an explanation of class members' opt-out rights, a date by which they must opt out, and information about how to do so; (6) the date and location of the final fairness hearing; and (7) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards.[46]

**6. Service Award**

The settlement proposes a service award to Ms. Reilly of $10,000. The court reduces it to $5,000.

District courts must evaluate proposed awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, … [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are

---

[45] Order – ECF No. 53.

[46] Notice Packet, Ex. A to Kruckenberg Decl. – ECF No. 56-2 at 5–10.

1   intended to compensate class representatives for work done on behalf of the class, to make up for
2   financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their
3   willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d
4   948, 958–59 (9th Cir. 2009) (citation omitted). The Ninth Circuit has "noted that in some cases
5   incentive awards may be proper but [has] cautioned that awarding them should not become routine
6   practice." *Radcliffe v. Experian Info. Sols.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing
7   *Staton*, 327 F.3d at 975–78). Also, district courts "must be vigilant in scrutinizing all incentive
8   awards to determine whether they destroy the adequacy of the class representatives." *Id*. at 1164.
9   In this district, a $5,000 incentive award is "presumptively reasonable." *Bellinghausen*, 306 F.R.D.
10  at 266 (collecting cases).

11  Ms. Reilly's efforts in the case include meeting with her attorneys, gathering documents,
12  providing case-relevant information, and preparing and sitting for her deposition.[47] She accepted
13  the risk that "because this lawsuit is a public record, it could and can adversely affect [her] ability
14  to obtain employment."[48] In total, she spent approximately 40 hours prosecuting the case.[49]

15  The proposed award is high considering the hours Ms. Reilly spent and the average class
16  recovery of $434.70 (with the highest recovery of $1,507.27). *See, e.g., Harris v. Vector Mktg.*
17  *Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7–8 (N.D. Cal. Feb. 6, 2012) (awarding
18  $12,500 where the plaintiff spent "more than 100 hours on this case (which included being
19  deposed twice)" and the defendant "pursued disclosure of her private information"); *Dyer*, 303
20  F.R.D. at 335–36 (awarding $10,000 where the plaintiff was deposed, attended a four-day
21  mediation (which required her to travel and miss work), and spent "more than 200 hours assisting
22  in the case"); *Bellinghausen.*, 306 F.R.D. at 267–68 (awarding $15,000 where the plaintiff spent
23  73 hours on the case, attended mediation, and was rejected by potential employers because of his
24  status as class representative); *cf. Bolton v. U.S. Nursing Corp.*, No. 12-cv-4466-LB, 2013 WL

---

[47] Reilly Decl. – ECF No. 56-1 at 2 (¶ 4).
[48] *Id*. at 3 (¶ 10).
[49] *Id*. at 2 (¶ 4).

5700403, at *6 (N.D. Cal. Oct. 18, 2013) (approving $10,000 in incentive award where the average recovery is $595.91 but "the largest settlement recovery is estimated to be $4,602.67, and 204 class members will receive more than $1,500").

Given the hours spent, the recoveries here, and the points of reference from other cases, the court approves the presumptive $5,000.

### 7. Attorney's Fees and Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The court approves $1,666,666.67 in attorney's fees and $14,266.97 in costs.[50]

Fee provisions in class-action settlements must be reasonable. *In re Bluetooth.*, 654 F.3d at 941. The court is not bound by the parties' settlement agreement as to the amount of fees. *Id.* at 942–43. The court must review fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (quotation omitted).

When counsel recovers a common fund that confers a "substantial benefit" on a class of beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002). In common-fund cases, courts may calculate a fee award under either the "lodestar" or "percentage of the fund" method. *Id.*; *Hanlon*, 150 F.3d at 1029.

Where the settlement involves a common fund, courts typically award attorney's fees based on a percentage of the settlement fund. The Ninth Circuit has established a "benchmark" that fees should equal 25% of the settlement, although courts diverge from the benchmark based on factors that include "the results obtained, risk undertaken by counsel, complexity of the issues, length of

---

[50] Mot. – ECF No. 56 at 8.

the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco, Inc.*, No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, at *2 (E.D. Cal. Mar. 25, 2013); *see also Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *In re Pac. Enter. Secs. Litig.*, 47 F.3d at 379; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers. *See, e.g.*, *Staton*, 327 F.3d at 972–74; *Pokorny v. Quixtar, Inc.,* No. C-07-0201-SC, 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013) ("The court may properly consider the value of injunctive relief obtained as a result of settlement in determining the appropriate fee."); *In re Netflix Privacy Litig.*, No. 5:11-CV-0379-EJD, 2013 WL 1120801, at *7 (N.D. Cal. Mar. 18, 2013) (settlement value "includes the size of the cash distribution, the *cy pres* method of distribution, and the injunctive relief").

Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the actual amount that is ultimately claimed. *Young v. Polo Retail, LLC*, No. C-02-4547-VRW, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) (citing *Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026 (9th Cir. 1997) ("district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount being made available)).

If the court applies the percentage method, it then typically calculates the lodestar as a "cross-check to assess the reasonableness of the percentage award." *See*, *e.g.*, *Weeks v. Kellogg Co.,* No. CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, *Inc.*, 111 Cal. App. 3d 215, 226–27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc*., 82 Cal. App. 4th 19, 26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id.*; *accord Laffitte v. Robart Half Internet, Inc*, 1 Cal. 5th 480,

1   503–06 (2016) (holding, under California law, that "the percentage method to calculate

2   [attorney's] fee in a common fund case" is appropriate and the trial court has "discretion to

3   conduct a lodestar cross-check on a percentage fee").

4       Based on counsel's submissions, the fee award is appropriate as a percentage of the common

5   fund, supported by a lodestar cross-check (with counsel's suggested multiplier), given the results

6   obtained, the lack of objections to the settlement, and counsel's litigating the case on a

7   contingency basis for almost two years with motions practice, written discovery, and depositions.[51]

8   *Cf. e.g., Burden v. SelectQuote Ins. Servs.*, No. C 10-5966-LB, 2013 WL 3988771, at *4–5 (N.D.

9   Cal. Aug. 2, 2013) (awarding 33% of settlement funds as attorney's fees "given the extensive

10  litigation in the case[,] [] the successful results achieved[,]" and the contingency risk); *Villalpando

11  v. Excel Direct Inc.*, Nos. 12-cv-04137-JCS, 13-cv-03091-JCS, 2016 WL 7740854, at *2 (N.D.

12  Cal. Dec. 12, 2016) (one-third of the settlement fund represents reasonable attorney's fees because

13  of "the contingent risk, [c]ounsel's documented lodestar, the complex and protracted nature of the

14  case, and strong result for the case").

15      The lodestar cross-check supports this conclusion. The billing rates are normal and customary

16  (and thus reasonable) for lawyers of comparable experience doing similar work.[52] *Cuviello v. Feld

17  Entm't, Inc.*, No. 13-cv-04951-BLF, 2015 WL 154197, at *2–3 (N.D. Cal. Jan. 12, 2015) ("court

18  has broad discretion in setting the reasonable hourly rates used in the lodestar calculation")

19  (citation omitted); *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001) (court can rely on its own

20  experience); *accord Open Source Sec. v. Perens*, 803 F. App'x 73, 77 (9th Cir. 2020). Counsel

21  provided billing records justifying the hours worked in the case and allowing a conclusion about a

22  multiplier. *Cf. Vizcaino*, 290 F.3d at 1051 n.6 ("Multiples ranging from one to four are frequently

23  awarded in common fund cases when the lodestar method is applied").

---

[51] Hyun Decl. – ECF No. 56-3 at 5 (¶ 11); Marder Decl. – ECF No. 56-4 at 2 (¶ 2); Lee Decl. – ECF No. 56-5 at 2 (¶ 3); Kruckenberg Decl. – ECF No. 56-2 at 3–4 (¶¶ 9–10, 12); Settlement Agreement – ECF No. 44 at 23 (§ 17.5); Mot. – ECF No. 56 at 25 (contingency basis).

[52] Hyun Decl. – ECF No. 56-3 at 4 (¶ 9); Marder Decl. – ECF No. 56-4 at 2 (¶ 6); Lee Decl. – ECF No. 56-5 at 4 (¶ 15).

United States District Court
Northern District of California

1    The court awards the reasonable out-of-pocket costs of $14,266.97. Fed. R. Civ. P. 23(h); *see*
2    *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys may recover reasonable expenses
3    that would typically be billed to paying clients in non-contingency matters); *Van Vranken v. Atl.*
4    *Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action
5    settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by
6    law or by the parties' agreement." Fed. R. Civ. P. 23(h). Counsel has expended $14,266.97 in
7    litigation cost to date, which is less than the $30,000 estimated by the Settlement Agreement.[53]

In sum, the court awards $1,666,666.67 in attorney's fees and $14,266.97 in costs.

### 8. *Cy Pres* Award

The court approves the *cy pres* award to the Alliance for Children's Rights, which, among other things, provides job-related resources to young adults.[54] It accounts for and has a nexus to the nature of the lawsuit, the objectives of the statutes, and the interest of the silent class members. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 818–22 (9th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038–41 (9th Cir. 2011).

### 9. CAFA and PAGA Notices

On February 24, 2020, REI provided notice of the settlement showing compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the appropriate federal and state officials.[55] The court's final approval hearing is more than 90 days after service as required by 28 U.S.C. § 1715(d). At the hearing, the parties confirmed that they provided the appropriate notice of settlement for the PAGA claim to the LWDA.

---

[53] Settlement Agreement – ECF No. 44 at 6 (§ 11.2).
[54] Mot. – ECF No. 45 at 11 n. 3.
[55] Farber Decl. – ECF No. 47.

**10. Other Orders**[56]

All claims asserted in this action are dismissed with prejudice as to the plaintiff, the Settlement Class Members, and the State of California (including the LWDA) pursuant to the terms of the Settlement Agreement. The parties will each bear their own costs and attorney's fees, except as provided in the Settlement Agreement and as set forth in this order.

Upon entry of this order and the accompanying judgment, the claims in this action and the Released Class and PAGA claims of each Class Member, PAGA Member, and the State of California (including the LWDA) against defendant, and against any and all of the Released Parties as defined in the Settlement Agreement, are fully, finally, and forever released, relinquished and discharged pursuant to the terms of the Settlement Agreement to the maximum extent permitted by law.

Upon entry of this order and the accompanying judgment, all Settlement Class Members, PAGA Members, and the State of California (including the LWDA) are hereby forever barred and enjoined from prosecuting the Released Class Claims and Released PAGA Claims against any of the Released Parties as defined in the Settlement Agreement and as set forth in the Preliminary Approval Order.

Each Settlement Class Member and the State of California (including the LWDA) are bound by this order and the judgment, including, without limitation, the release of claims as set forth in the Settlement Agreement.

This order, the judgment, the settlement agreement, and all papers related thereto, are not, and will not be construed to be, an admission by defendant of any liability, claim or wrongdoing whatsoever, and will not be offered as evidence of any such liability, claim or wrongdoing in this action or in any other proceedings.

Without affecting the finality of this order and the accompanying judgment filed herewith, the court reserves exclusive and continuing jurisdiction over the action, the plaintiff, the settlement

---

[56] The remaining provisions in this order are taken from the proposed order. Proposed Order – ECF No. 56-6 at 5–6 (¶¶ 13–18).

1    class members, and defendant for the purposes of supervising the implementation, enforcement,

2    construction, and interpretation of the settlement agreement, preliminary approval order,

3    distribution of the maximum settlement fund, the final judgment, and this order.

## CONCLUSION

The court (1) certifies the class for settlement purposes only, (2) approves the settlement and authorizes the distribution of funds (as set forth in this order), (3) appoints the class representative and class counsel, and (4) approves $1,666,666.67 in attorney's fees, $14,266.97 in costs, $29,750 in administration costs, and a service award of $5,000, and (5) orders the parties and Phoenix to carry out their obligations in the settlement agreement.

**IT IS SO ORDERED.**

Dated: August 6, 2020

_____
LAUREL BEELER
United States Magistrate Judge